This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: July 2, 2026**

**No. S-1-SC-40626**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**IZAIAH GARCIA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joseph A. Montano, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Deputy Solicitor General
Albuquerque, NM

for Appellee

## DECISION

**THOMSON, Justice.**

**{1}** Izaiah Garcia (Defendant) challenges his convictions for first-degree depraved mind murder, NMSA 1978, § 30-2-1(A)(3) (1994), and aggravated assault, NMSA 1978, § 30-3-3 (1977). Defendant raises three claims in this appeal: (1) that the evidence was insufficient to prove he committed depraved mind murder and aggravated assault; (2)

that the trial court erred in denying Defendant's motion for a change of venue; and (3) that the trial court erred by admitting evidence of Defendant's involvement in a shooting several weeks prior to this incident—a previous attempt to kill the intended target in this case.

**{2}**     We conclude that Defendant's first-degree depraved mind murder conviction is supported by sufficient evidence, and that the district court did not abuse its discretion in denying his motion for a change of venue or in admitting evidence of the prior shooting. Because Defendant's sufficiency challenge with respect to his aggravated assault conviction is completely undeveloped, we decline to consider it. *See Elane Photography v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (brackets, internal quotation marks, and citation omitted)). Accordingly, we affirm Defendant's convictions and sentence. We exercise our discretion to resolve this appeal through a nonprecedential decision. *See* Rule 12-405(B) NMRA.

## I.     BACKGROUND

**{3}**     Cayla Campos was shot and killed while playing Pokémon Go! with her boyfriend, Sidney Toler, on the night of October 18, 2019. Cayla was slowly driving alongside Bianchetti Park when the couple encountered two cars blocking the road and what they quickly realized was an unfolding robbery. Sidney saw two men standing on either side of one of the cars; one was pointing a gun inside the driver's side window while a "tall and lanky" man took items, including a Louis Vuitton belt and chicken nuggets, from the passenger side window. Realizing what was happening, Cayla executed a three-point turn and attempted to drive away. The armed man pursued Cayla's car, bashing it several times with the gun before firing four to six shots at her retreating vehicle. One of the bullets struck Cayla in the neck, ultimately killing her. Cayla's car rolled through the park and hit an electrical box before colliding with a nearby home, only stopping after it crashed through the front wall of the house.

**{4}**     Investigators linked Defendant to the crime through witness identification of his vehicle, phone records placing him near the park that night, and DNA collected from a 5.56 mm ammunition box matching the caliber of casings recovered at the scene. At trial, the jury heard from Sidney Toler and three other witnesses to the shooting, including Defendant's friend and the second participant in the robbery: Gabriel Marquez (Gabe). Gabe testified that he and Defendant went to the park that night after Defendant's girlfriend, Katrina, called and expressed concern about people gathered outside of her house near Bianchetti Park. One of the vehicles resembled a SUV belonging to another young man, Christian Mattock, with whom Defendant had a history.

**{5}**     Defendant and Gabe drove to Katrina's house in Defendant's red Pontiac G8. At Gabe's suggestion, they took an AR-15 belonging to Gabe. When they pulled up to Katrina's house, they saw three cars, including a SUV and a red Mustang, on the street. Defendant quickly grabbed the AR-15 and leapt out of the car without pausing to put it in park. As he approached, the SUV pulled away. With their faces covered, Defendant

and Gabe proceeded to rob the three teenagers occupying the red Mustang. Upon noticing Cayla's car—a black Subaru Impreza hatchback—Defendant gave pursuit, striking the vehicle several times with the barrel of the gun before firing at least four rounds at the car as Cayla fled. Gabe testified that Defendant told him that he fired the shots that night because he believed Christian was in the vehicle.

{6}     According to Gabe, Defendant held a grudge against Christian because Christian had pistol-whipped and shot at Gabe years earlier. According to Gabe, that grudge culminated in Defendant attempting to shoot Christian at a party in September of 2019. Defendant missed Christian and instead struck and killed a bystander—Sean Markey. At trial, two of Defendant's friends, Tanner White and Zeke Fox, also testified to Defendant's grudge against Christian and the events of the September shooting.

{7}     The jury convicted Defendant of first-degree deliberate intent murder, first-degree depraved mind murder, shooting at or from a motor vehicle, armed robbery, aggravated assault, tampering with evidence, child abuse, and conspiracy. To avoid violating the prohibition against double jeopardy, the district court vacated the conviction for first-degree deliberate intent murder and sentenced Defendant to life in prison. Additional facts are provided as pertinent to the analysis.

## II.     DISCUSSION

### A.     Sufficiency of the Evidence

{8}     Defendant challenges the sufficiency of the evidence underlying his first-degree depraved mind murder and aggravated assault convictions. Because his argument regarding the aggravated assault conviction is limited to a single heading and devoid of any citation to authority, we decline to review that issue. *See Elane Photography*, 2013-NMSC-040, ¶ 70; *see also Lee v. Lee* (*In re Adoption of Doe*), 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). We, thus, focus our analysis on Defendant's first-degree depraved mind murder conviction and conclude that sufficient evidence supported the jury's verdict.

### 1.     Standard of review

{9}     When reviewing the sufficiency of the evidence, the Court asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "New Mexico appellate courts will not invade the jury's province as fact-finder by second-guess[ing] the jury's decision concerning the credibility of witnesses, reweigh[ing] the evidence, or substitut[ing] its judgment for that of the jury." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (alterations in original) (internal quotation marks and citation omitted).

**2.      Sufficient evidence supports Defendant's conviction for depraved mind murder**

**{10}**      Defendant challenges the sufficiency of the evidence supporting his first-degree depraved mind murder conviction in three ways: (1) the evidence did not prove that he knew more than one person was in danger; (2) there was insufficient evidence that Defendant acted with an intensified malice or evil intent; and (3) the co-conspirator testimony against him was inherently untrustworthy and, therefore, cannot support Defendant's convictions. Each of these arguments is unpersuasive.

**{11}**      New Mexico defines depraved mind murder as "the killing of one human being by another without lawful justification or excuse . . . by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life." Section 30-2-l(A)(3). To distinguish the mental state required for depraved mind murder from that required for the lesser crime of second-degree murder, this Court has identified four "indicators" of a depraved mind, each of which is necessary for a finding of guilt: (1) that "more than one person [was] endangered by the defendant's act," (2) that the defendant's act was "intentional" and "extremely reckless," (3) that the defendant had "subjective knowledge that his act was greatly dangerous to the lives of others," and (4) that the defendant's act "encompass[ed] an intensified malice or evil intent." *State v. Dowling*, 2011-NMSC-016, ¶ 11, 150 N.M. 110, 257 P.3d 930 (internal quotation marks and citations omitted); *State v. Candelaria*, 2019-NMSC-004, ¶ 10, 434 P.3d 297. Defendant's arguments attack the first and fourth of these indicators.

**a.      Co-conspirator testimony is not inherently untrustworthy, but rather falls within the province of the jury's credibility determination**

**{12}**      Because Gabe's testimony is woven into our analysis of the sufficiency of the evidence, we first dispose of Defendant's argument that Gabe's involvement in the robbery rendered his testimony "inherently untrustworthy." Defendant asserts that, because Gabe was charged as a co-conspirator in Defendant's case and obtained a favorable plea deal in exchange for testifying, any reliance on his testimony "should ring alarm bells." He suggests that the suspect nature of Gabe's testimony means the jury should not have been permitted to rely upon it when reaching their verdict.

**{13}**      However, New Mexico plainly does not impose any special requirements on testimony from a co-conspirator; rather, it is sufficient that the witness is subject to cross-examination. *State v. Sarracino*, 1998-NMSC-022, ¶ 12, 125 N.M. 511, 964 P.2d 72 (explaining that, even where co-conspirator testimony is the *only* direct evidence connecting the defendant to the crime, it is enough that "[a] defendant can raise any ulterior motive he or she believes the witness may have, such as a motive to fabricate testimony, and challenge such testimony on cross-examination, as well as raise questions during closing argument"). In fact, our criminal UJIs expressly prohibit district courts from instructing the jury with regard to co-conspirator testimony. UJI 14-5015 NMRA use note. Such an instruction is unnecessary and, in fact, *contradicts* our general instruction, UJI 14-5020 NMRA, by directing the jury, the sole arbiter of witness

credibility, that it *must* consider certain testimony inherently suspect. *See State v. Smith*, 2001-NMSC-004, ¶¶ 25-29, 130 N.M. 117, 19 P.3d 254.

{14}   Like any other witness, Gabe was subject to cross-examination, and weighing the credibility of his testimony was wholly within the province of the jury. *See Garcia*, 2011-NMSC-003, ¶ 5 ("New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses." (brackets, internal quotation marks and citation omitted)). The same is true with respect to the credibility of the other witnesses whose testimony Defendant takes issue with in this appeal, including Tanner and Zeke, whom Defendant claims also had reason to lie because of their association with Defendant and the September 2019 shooting. Defendant had the opportunity to cross-examine both witnesses, and the jury was free to believe or disbelieve their testimony when deciding Defendant's guilt.

**b.     There was sufficient evidence that Defendant knew his actions endangered the lives of more than one person**

{15}   Defendant claims there was no evidence supporting a reasonable inference that he knew more than one person was in Cayla's vehicle, emphasizing that Gabe testified only that Defendant believed *Christian* was in the car. However, evidence that Defendant *actually knew* that more than one person was in the vehicle is not required. *See State v. McCrary*, 1984-NMSC-005, ¶ 9, 100 N.M. 671, 675 P.2d 120. While Defendant is correct that subjective knowledge of the danger posed to others is needed, "sufficient subjective knowledge exists if [the defendant's] conduct was very risky, and under the circumstances *known to* [*the defendant*,] they should have realized this very high degree of risk." *Id.*

{16}   Here, the jury heard that Defendant fired four to six rounds from an AR-15 toward a moving vehicle as it drove through a slumbering residential neighborhood. The unknown occupants of the moving vehicle were not the only potential victims. Bianchetti Park sits at the center of a cul-de-sac completely encircled by densely situated homes. Even if the jury accepted that Defendant only thought Christian was in the vehicle, that presumes that Defendant believed that Christian was *driving* the vehicle. Defendant's decision to shoot the driver of a moving car exposed the people inside the surrounding homes to stray bullets and the risk that, if Defendant successfully killed or injured the driver, the vehicle would keep moving until it collided with a nearby home. Indeed, that was the ultimate result of Defendant's actions: Cayla's car struck an electrical box before crashing through the front wall of a nearby home where a mother lived with her three children. Those circumstances were sufficient for a jury to infer that Defendant knew his actions were greatly dangerous to the lives of others. *See McCrary*, 1984-NMSC-005, ¶ 11 (finding sufficient evidence of depraved mind murder where defendants fired multiple rounds into stationary vehicles when they "had reason to know people were in the area").

**c.     There was sufficient evidence that Defendant fired the shots that killed Cayla with "an intensified malice or evil intent"**

{17}     Defendant asserts the evidence was insufficient to prove that he fired the shots with "an intensified malice or evil intent." *Dowling*, 2011-NMSC-016, ¶ 11 (internal quotation marks and citation omitted). Within this claim, Defendant also briefly argues the evidence was insufficient to show that he fired the shots at Cayla's car—not Gabe. The jury heard sufficient evidence of both.

{18}     Testimony from multiple witnesses supports the jury's conclusion that Defendant fired the shots that killed Cayla. Indeed, Gabe testified unequivocally that Defendant was the shooter. Gabe's testimony would have been sufficient evidence on its own. *State v. Hunter*, 1933-NMSC-069, ¶ 6, 37 N.M. 382, 24 P.2d 251 ("[T]he testimony of a single witness may legally suffice as evidence upon which the jury may [find] a verdict of guilt."). Gabe's account was corroborated, however, by the other evidence in the case. Sidney testified that a red car with a loud engine pulled past Cayla's car as they played Pokémon Go! alongside Bianchetti Park. Sidney also stated that of the two men he saw robbing the occupants of the car parked on the street, the taller, skinny individual was removing items from the car and did not appear armed. Gabe was lean and over six feet tall in contrast to Defendant's shorter, stouter stature. Finally, the jury heard that Gabe's DNA could be excluded from the ammunition box matching the caliber of the rounds used in the shooting while Defendant's could not. That evidence was more than sufficient for the jury to conclude that Defendant was the shooter.

{19}     There was also sufficient evidence that Defendant acted with "an intensified malice or evil intent." *Dowling*, 2011-NMSC-016, ¶ 11. This requires a defendant to display "extremely reckless conduct evidencing indifference for the value of human life." *State v. Ibn Omar-Muhammad*, 1985-NMSC-006, ¶ 24, 102 N.M. 274, 694 P.2d 922, *holding modified by State v. Cleve*, 1999-NMSC-017, 127 N.M. 240, 980 P.2d 23. Not only did the shooting endanger the lives of multiple people, but the jury also heard that it was Defendant's animus toward Christian that drove Defendant to shoot at Cayla's car that night believing Christian was inside. Gabe testified to Defendant's vendetta against Christian and his previous attempt at killing him under similarly reckless circumstances. Zeke and Tanner's testimony further highlighted the conflict between Defendant and Christian, supporting a reasonable inference that Defendant acted with "an intensified malice or evil intent" when he fired the shots at Cayla's car hoping, instead, to kill Christian. *Dowling*, 2011-NMSC-016, ¶ 11.

**B.     The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for a Venue Change**

{20}     Defendant filed a motion for a change of venue. His motion cited media coverage in the days leading up to trial identifying him as the defendant both in this case and in Sean Markey's murder—coverage so sensationalized, he argued, that he could not get a fair trial in Albuquerque. Instead of formally ruling on Defendant's motion, the district court proceeded to voir dire and incorporated additional measures to screen for exposure to media coverage. The district court circulated supplemental questionnaires,

called a larger jury pool, and questioned venire members regarding any knowledge of Defendant, the potential witnesses in the case, or media coverage surrounding the case or the underlying incidents. Ultimately, only four venire members expressed any prior awareness of Defendant or the case, and none of the four sat on the petit jury.

**{21}** Defendants have a constitutional right to an impartial jury and may move for a change of venue if they believe they cannot obtain a fair trial due to "public excitement or local prejudice" permeating the jury pool. N.M. Const. art. II, § 14; U.S. Const. amend. VI; NMSA 1978, § 38-3-3(B)(3) (2003). Absent a preceding venue change, a motion to change venue is mandatory where supported by a sufficient affidavit; however, the district court may require a hearing on the evidence, at which point the "change of venue ceases to be mandatory and is left to the court's discretion." *State v. House*, 1999-NMSC-014, ¶ 29, 127 N.M. 151, 978 P.2d 967. "The trial court's discretion in this matter is broad and will not be disturbed on appeal unless" the party challenging the venue determination demonstrates "a clear abuse of that discretion." *Id.* ¶ 31.

**{22}** District courts may order a venue change based on either presumed or actual prejudice. *Id.* ¶¶ 45-47. "Presumed prejudice arises when evidence shows that the community is so saturated with inflammatory publicity about the crime that it must be presumed that the trial proceedings are tainted." *State v. Astorga*, 2015-NMSC-007, ¶ 68, 343 P.3d 1245 (internal quotation marks and citation omitted). Where the district court concludes there is insufficient evidence of presumed prejudice, the inquiry shifts to whether there is evidence of actual prejudice. *State v. Barrera*, 2001-NMSC-014, ¶ 16, 130 N.M. 227, 22 P.3d 1177. "Actual prejudice requires a direct investigation into the attitudes of potential jurors [during voir dire] . . . to establish whether there is such widespread and fixed prejudice within the jury pool that a fair trial in that venue would be impossible." *House*, 1999-NMSC-014, ¶ 46. Where the district court has rejected a claim of presumed prejudice and proceeded to voir dire, "we will limit our review to the evidence of actual prejudice." *Barrera*, 2001-NMSC-014, ¶ 16. This is because "A finding of no actual prejudice [which is] supported by substantial evidence . . . necessarily precludes a finding of presumed prejudice." *Astorga*, 2015-NMSC-007, ¶ 68 (internal quotation marks and citation omitted).

**{23}** Here, the district court's conclusion that there was no actual prejudice was supported by substantial evidence. Voir dire only identified four venire members who indicated any prior awareness of Defendant, the State's witnesses, or the circumstances surrounding this case. Those venire members did not explain their knowledge in front of the other potential jurors, and none of the four sat on the petit jury.

**{24}** Absent any evidence of actual prejudice amongst the jurors in this case, the district court's denial of Defendant's motion was not an abuse of discretion. *Barrera*, 2001-NMSC-014, ¶ 18.

**{25}** Finally, Defendant argues that the proliferation of immediately accessible news via social media requires us to change our analysis of presumed prejudice. He fails to demonstrate why our existing test for presumed prejudice is insufficient or articulate what the alternative rule should be. Defendant also fails to cite any evidence that a shift

in how we consume news impacted his ability to obtain an impartial jury in this case, nor could he given the complete absence of actual prejudice. Accordingly, we affirm the district court's decision denying Defendant's motion for a venue change.

**C.    The District Court Did Not Abuse Its Discretion in Admitting Evidence That Defendant Had Recently Been Involved in a Similar Shooting**

**{26}**    Defendant argues that the district court's decision to admit evidence pertaining to Defendant's involvement in a prior shooting—indeed, a previous attempt to kill Christian—was an abuse of discretion. This evidence included surveillance video and testimony from Gabe, Tanner, and Zeke about Defendant's vendetta against Christian and his attempt to shoot Christian at a party several weeks before the shooting that killed Cayla. Defendant objected to this evidence under Rule 11-404 NMRA and Rule 11-403 NMRA both in response to the State's motion in limine and during trial through a standing objection. The district court ruled that the evidence was admissible to show Defendant's intent, motive, opportunity, and identity, but the district court limited the permissible testimony to exclude any reference to Sean Markey's homicide. The district court also admitted surveillance video showing Defendant arriving at the party in a red Pontiac G8 and shooting toward Christian but excluded the portion of the video that showed one of the shots striking Sean Markey.

**{27}**    We review the district court's evidentiary rulings for an abuse of discretion. *State v. Bailey*, 2017-NMSC-001, ¶ 12, 368 P.3d 1007. An abuse of discretion arises where a ruling is "clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted).

**{28}**    On appeal, Defendant does not provide a developed argument under Rule 11-404(B) as to why the evidence was *not* demonstrative of Defendant's intent, motive, opportunity, and identity—and we will not search for one. *See Elane Photography*, 2013-NMSC-040, ¶ 70. None of his citations to authority go to the issue of whether the testimony and surveillance video was, indeed, merely propensity evidence. His singular reliance on our holding in *State v. Gallegos* is divorced from the analysis in that case and the facts of this one. *See* 2007-NMSC-007, ¶ 31, 141 N.M. 185, 152 P.3d 828.

**{29}**    In *Gallegos*, we held that the district court erred in not severing charges where evidence of separate instances of criminal sexual contact with a minor involving two separate victims would not be cross-admissible to show a common plan or scheme if the acts were separately charged. *Id.* ¶ 36. The State in this case did not argue that Defendant's separate acts indicate that he is generally capable of attacking multiple people, that he had a common scheme or plan to do so, or that he is predisposed to certain conduct. Instead, the State sought to present evidence of two attempts to kill one specific individual to demonstrate intent, motive, and identity with respect to the second attempt. Beyond the factual distinctions, the Court in *Gallegos* did not analyze intent, motive, or identity because the state did not adequately argue those other purposes in the district court. *Id.* ¶ 25. Here, the State clearly tied the evidence to Defendant's intent, motive, and identity in both its motion in limine and at the hearing on the matter. The district court agreed that the evidence was proper under Rule 11-

404(B), and that Defendant failed to demonstrate why that decision was "clearly against the logic and effect of the facts and circumstances of the case." *Bailey*, 2017-NMSC-001, ¶ 12 (internal quotation marks and citation omitted).

**{30}** Instead, Defendant argues that the district court should have excluded evidence of his prior attempt to shoot Christian as unfairly prejudicial under Rule 11-403, asserting there were other means of proving that Defendant held a grudge against Christian. *See State v. Otto*, 2007-NMSC-012, ¶¶ 14-15, 141 N.M. 443, 157 P.3d 8 (considering whether other evidence supporting or discounting the same inference was available when weighing the probative value of evidence under Rule 11-403). Rule 11-403 provides: "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Importantly, evidence being merely prejudicial is insufficient for exclusion under Rule 11-403; rather, "prejudice is considered unfair when [the evidence] goes *only* to character or propensity." *Otto*, 2007-NMSC-012, ¶ 16 (internal quotation marks and citation omitted). Here, the district court concluded that the probative value of Defendant's previous attempt to kill Christian outweighed its risk of unfair prejudice. We agree.

**{31}** To meet its burden for first-degree depraved mind murder, the State had to prove beyond a reasonable doubt that Defendant—not Gabe—shot Cayla and that he did so with either deliberate intent or a depraved mind. Although prejudicial, evidence that Defendant tried to kill Christian just a few weeks prior is also highly probative of his intent, his motive, and his identity as the shooter in this second unsuccessful attempt to kill Christian. It demonstrates Defendant's intent to kill borne from his vendetta against Christian, from which the jury could reasonably infer his intent to kill who he believed to be Christian in this case. That use comports with Rule 11-404, and the district court did not abuse its discretion in admitting the evidence to show intent, identity, and motive. *See State v. Romero*, 2019-NMSC-007, ¶¶ 29-32, 435 P.3d 1231 (concluding that the probative value of prior criminal acts showing identity and motive in a later killing outweighed the prejudicial nature of the evidence).

**{32}** Nor do we view this evidence as cumulative or capable of being established through other means as Defendant suggests. While Tanner, Zeke, and Gabe also testified to Defendant's grudge against Christian, that the grudge was so severe as to give rise to intent to kill is left to inference absent the prior attempt. And, as Defendant demonstrates in his sufficiency challenge, Gabe's testimony that Defendant was the shooter was susceptible to counterevidence. The jury heard that Gabe also had reason to want revenge on Christian and that Cayla was killed using Gabe's gun. The testimony and video evidence showing that Defendant already once tried to kill Christian over his grudge helped corroborate Gabe's account. The evidence showed that Defendant had the motive and, critically, the intent to kill Christian more so than Gabe did himself, making it more likely that Defendant was the shooter in this case.

**{33}** Finally, Defendant takes issue with the number of times the surveillance video of him shooting at Christian at a party was played for the jury—a total of four times. He

asserts that the video was inflammatory and that its use was needlessly cumulative. Were we to conclude this evidence was inadmissible, the number of times it was played might contribute to whether the error was prejudicial. However, we agree with the district court that, while prejudicial, this evidence was not *unfairly* prejudicial, and it was highly probative of intent, motive, and identity in this case. Furthermore, the district court sanitized the video to ensure that the killing of Sean Markey—the truly inflammatory component of the incident—was excluded. Finally, Defendant does not provide authority for the proposition that multiple witnesses relying upon the same video at trial renders that evidence cumulative. We conclude that the district court did not err when it allowed the video to be presented four times at trial.

## III.    CONCLUSION

**{34}**   We affirm Defendant's convictions and sentence.

**{35}   IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**